UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CAROLINE HYONG SIM URSO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 14-02289 (GJS)<br><br>MEMORANDUM OPINION AND<br>ORDER |

## I.    PROCEEDINGS

Plaintiff Caroline Hyong Sim Urso ("Plaintiff") filed a complaint seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before the undersigned United States Magistrate Judge, and a Joint Stipulation addressing disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.    BACKGROUND

Plaintiff applied for DIB on July 14, 2011, alleging disability since August 1, 2010, due to a traumatic brain injury, depression, anxiety, bipolar disorder,

stress, anger, difficulty being around other people, short-term memory problems, difficulty focusing, inner ear damage, forgetfulness, and migraines. (Administrative Record ("AR") 159-60, 180).  Following the denial of her application initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing at Plaintiff's request.  (AR 35-62, 103-07, 96-101).

On March 15, 2013, the ALJ issued a decision applying the five-step sequential evaluation process to find Plaintiff not disabled.  (AR 18-31); *see* 20 C.F.R. § 404.1520(b)-(g)(1).[1]  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, and that Plaintiff suffers from the severe impairments of traumatic brain injury, migraines, vertigo, and affective disorder.  (AR 20).  The ALJ found that Plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations.  (AR 20).  The ALJ assessed Plaintiff with the residual functional capacity ("RFC") to perform medium work (20 C.F.R. § 404.1567(c)), with the following limitations: nonpublic work in a habituated setting; minimal contact with coworkers and supervisors; simple, repetitive, tasks of no more than three steps; no fast paced work; occasional postural activities; no balancing or climbing of ladders, ropes or scaffolds; and no work around hazards.  (AR 22).  The ALJ determined that Plaintiff is unable to perform her past relevant work, but is capable of making a

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. § 416.920(b)-(g)(1).

successful adjustment to other work that exists in significant numbers in the economy.  (AR 28-29).  Therefore, the ALJ concluded that Plaintiff was not disabled.  (AR 29).

On November 6, 2014, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision denying benefits.  Plaintiff raises the following arguments:  (1) the ALJ failed to properly assess the medical evidence; (2) the ALJ erred in finding Plaintiff can perform other work; and (3) the ALJ failed to provide adequate reasons for discrediting Plaintiff's subjective complaints.  (Joint Stipulation ("Joint Stip.") at 3-7, 12-14, 17-20, 23).  The Commissioner asserts that the ALJ's decision should be affirmed.  (Joint Stip. at 7-12, 14-17, 20-23).

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if:  (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV.   DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends that the ALJ erred in the consideration of the opinions of two of Plaintiff's doctors:  examining psychologist, Richard Perez, Ph.D. and treating physician, Geetha Paladugu, M.D.  (Joint Stip. at 3-7, 12-13).

The law is well established that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's opinion is

3

not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)). Where a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See*, *e.g*., *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes*, 881 F.2d at 751.

Likewise, to reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Where the examining physicians' opinions are contradicted by those of other doctors, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record. *See Regennitter v. Commissioner of Social Sec. Admin*., 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Lester*, 81 F.3d at 830-31; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## 1. Dr. Perez

Dr. Perez completed a neuropsychological evaluation of Plaintiff in August 2011. (AR 283-89). Test results revealed average general intellectual ability, average to high average rote memory and recall, average to very superior attention and executive functioning, intact language abilities, mild to moderate deficits in visual motor processing speed and fine motor speed and dexterity, good impulse control and cognitive flexibility, but weakness on a combined inhibitory-switching

4

task, average visual memory with weakness for recall of content/designs, intact verbal recall, and mildly impaired ability to recognize verbal information previously presented. (AR 286-89). Dr. Perez diagnosed Plaintiff with cyclothymic disorder, which he characterized as a chronic, fluctuating mood disturbance involving irritable and hypomanic symptoms as well as depressive symptoms. (AR 288). Dr. Perez stated that Plaintiff's "persistent and significant mood related difficulties place her at serious risk for engaging in dangerous and harmful behaviors (e.g., impulsive and reactive behaviors when angry) as she attempts to cope in a maladaptive manner." (AR 288). Plaintiff's MRI brain scans were normal and the cause of Plaintiff's mood problems was unknown, but Dr. Perez noted that Plaintiff's MR spectroscopy results were indicative of mild neuronal loss or dysfunction and evidence of axonal injury involving the bilateral cingulate gyrus. (AR 288). Dr. Perez recommended psychological therapy and medical intervention. (AR 289). The ALJ summarized Dr. Perez's observations of Plaintiff and the test results in the decision. (AR 20, 24-25).

Plaintiff asserts that the ALJ erred by failing to specifically discuss whether Plaintiff's condition was consistent with a diagnosis of cyclothymic disorder and whether Plaintiff's mood disorder could interfere with Plaintiff's cognitive functioning. (Joint Stip. at 3-4, 13). Plaintiff also asserts that the ALJ erred by failing to address Dr. Perez's finding that Plaintiff was at risk of engaging in dangerous and harmful behavior by reacting impulsively and inappropriately when feeling anger. (Joint Stip. at 4, 12). The Court disagrees.

In the decision, based on the medical evidence of record, the ALJ concluded that Plaintiff suffered from the severe mental impairment of affective disorder. (AR 20, 25, 27, 70, 83, 315); *see* Ausman and Snyder, Medical Library, Lawyers Edition, Psychiatry § 8:45 ("Affective disorders are a group of clinical conditions characterized by a disturbance in how a patient acts, thinks, and perceives his or her environment, resulting in great subjective stress to the patient and often

5

imparting a feeling of loss of control."). While the ALJ did not expressly adopt Dr. Perez's diagnosis of cyclothymic disorder or incorporate verbatim the language used by Dr. Perez in his report, the ALJ assessed significant limitations in functioning based on Plaintiff's mental impairment and associated work-related problems. In relevant part, the ALJ found that Plaintiff is limited to simple, repetitive tasks of no more than three steps in a nonpublic, habituated setting, with no fast paced work and minimal contact with coworkers and supervisors. (AR 22). The ALJ's RFC determination, which reasonably accounted for Dr. Perez's findings, is entitled to deference. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (noting that it is the ALJ's responsibility, not the physician's, to determine residual functional capacity).

Plaintiff further argues that the ALJ erred by ignoring the 2009 MR spectroscopy study. (Joint Stip. at 4; AR 284). The ALJ, however, was not required to discuss every piece of evidence in the medical record. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Dr. Perez referenced the 2009 MR spectroscopy study while discussing a possible cause for Plaintiff's mood disorder. (AR 284, 288). As the etiology of Plaintiff's mental condition was unclear, reversal is not warranted based on the ALJ's failure to mention the 2009 MR spectroscopy study. (AR 289); *see Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (only significant probative evidence must be discussed and rejected by ALJ).

### 2.    Dr. Paladugu

Dr. Paladugu, Plaintiff's treating physician, conducted an initial evaluation of Plaintiff in December 2010, and diagnosed Plaintiff with rule out major depression, recurrent (296.33), versus bipolar disorder (296.53). (AR 298-300). Plaintiff reported moderate symptoms in the following areas: depressed mood; loss of interest/pleasure; agitation/irritability; change in energy; and poor concentration. (AR 298). While Plaintiff's mental status exam was normal, Dr.

6

Paladugu opined that Plaintiff's behavioral or emotional problems resulted in "severe" functional impairments in regards to family and other primary relationships, and "moderate" functional impairments in Plaintiff's relationship with her spouse and at work/school. (AR 300). Over the next two years, Dr. Paladugu continued to treat Plaintiff. (AR 291-97, 324-34). Plaintiff reported varying, but ongoing problems with her mood, energy levels, motivation, appetite, impulsivity, and other symptoms. (AR 291-97, 324-34). Dr. Paladugu managed Plaintiff's condition with prescription medications. (AR 291-97, 300, 324-34).

The ALJ properly found that Dr. Paladugu's findings that Plaintiff has "moderate" functional impairments in her relationship with her spouse and "severe" functional impairments in regards to her family and other primary relationships, were inconsistent with Plaintiff's own testimony about her daily interactions. (AR 27); *see* 20 C.F.R. § 416.927(c)(4) (a medical opinion that is inconsistent with the record as a whole is accorded less weight). Plaintiff testified that she and her two children would often visit the homes of her friend, mother, or grandmother, and when she was at home with her children, her mother or brother was usually with them. (AR 53). Plaintiff also stated that her husband usually went to the grocery store with her. (AR 54-55). The apparent conflict between Plaintiff's admitted social and family activities and Dr. Paladugu's assessment of moderate to severe limitations in Plaintiff's relationships constituted a legally sufficient basis for rejecting Dr. Paladugu's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that ALJ properly rejected physician's opinion that appeared to be inconsistent with the level of activity that the plaintiff engaged in by maintaining a household and raising two young children); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (finding that physician's opinion of marked limitations conflicted with the plaintiff's ability to adequately cope with activities of daily living).

Plaintiff asserts that the two remaining reasons cited by the ALJ (lack of

objective evidence to support the opinion and failure to meet the 12-month durational period) did not provide a legally sufficient basis for rejecting Dr. Paladugu's opinion.[2]   However, any asserted error was harmless, as the ALJ properly relied on the inconsistency between Plaintiff's activities and Dr. Paladugu's opinion to support the decision.   *See Stout v. Comm'r of Soc. Security*, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (harmless error is inconsequential to the nondisability determination); *Donathan v. Astrue*, 264 Fed. Appx. 556, 559 (9th Cir. 2008) (ALJ's erroneous characterization of treating physicians' opinions was harmless "because the ALJ provided proper, independent reasons for rejecting these opinions").   Moreover, Dr. Paladugu did not assess any limitations beyond those actually reflected in the RFC.   *See Stout*, 454 F.3d at 1055-56.   In discussing Dr. Paladugu's opinion, the ALJ stated that he considered Plaintiff's difficulties interacting with people and, therefore, included limitations of "nonpublic work and only minimal contact with coworkers and supervisors" in Plaintiff's RFC.   (AR 27).   In addition, the ALJ reasonably accounted for Dr. Paladugu's finding of moderate functional impairments at work/school by restricting Plaintiff to simple, repetitive tasks of no more than three steps in a habituated setting, involving no fast paced work.   (AR 22, 288).   Thus, any error in the ALJ's consideration of Dr. Paladugu's opinion was harmless, given the ALJ's RFC assessment and other proffered reason, both of which were supported by substantial evidence in the record.

Accordingly, reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of Dr. Perez and Dr. Paladugu.

/ / /

---

[2] The Commissioner essentially concedes that the ALJ erred in finding that Plaintiff's impairments did not satisfy the 12-month durational requirement because Dr. Paladugu treated Plaintiff for two years.   (Joint Stip. at 11; AR 25, 27, 291-300); *see* 20 C.F.R. § 404.1520(a)(4)(ii).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B. Reasoning Level

Plaintiff contends the ALJ erred at step five of the sequential evaluation because her RFC limitation to performing simple, repetitive tasks of no more than three steps precludes her from performing the other work identified by the vocational expert ("VE"), including work as a hand packager, store labor person, and small parts assembler.  (Joint Stip. at 13-14, 16; AR 28-29, 59-60).  Plaintiff asserts that the descriptions for these jobs in the Dictionary of Occupational Titles ("DOT") require her to perform at a higher reasoning level, (Level 2), than is permitted by her RFC.

The DOT separates reasoning levels into six categories.  Reasoning Levels 1, 2, and 3 are defined as follows:

> Level 1:  Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> Level 2:  Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

> Level 3:  Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

*See* DOT, App. C.  The DOT descriptions of the hand packager, store labor person, and small parts assembler jobs require Level 2 reasoning.  *See* DOT §§ 920.587-018 (hand packager), 922.687-058 (store labor person), 706.684-022 (small parts assembler).

In the assessment of Plaintiff's RFC, the ALJ found that Plaintiff could only perform simple, repetitive tasks of no more than three steps, in a habituated nonpublic work setting, with limited contact with coworkers and supervisors and no fast paced work.  (AR 22).  Plaintiff contends these limitations are inconsistent

with jobs with Level 2 reasoning, which require the ability to carry out "detailed instructions." (Joint Stip. at 14); *see* DOT, App. C. Plaintiff's argument lacks merit.

The Ninth Circuit recently explained that a limitation to simple, routine tasks was "more consistent" with Level 2 reasoning than Level 3 reasoning. *See Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). While the *Zavalin* court did not expressly find that a limitation to simple, routine tasks was in fact consistent with Level 2 reasoning, there is a general consensus within the Ninth Circuit and elsewhere that such a limitation is consistent with the ability to perform jobs requiring Level 2 reasoning. *See*, *e.g.*, *Hackett*, 395 F.3d at 1176 (holding Level 2 reasoning to be consistent with a limitation to simple, routine work tasks); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984-85, (C.D. Cal. 2005) (finding that a limitation to simple, repetitive tasks was consistent with Level 2 reasoning ability); *Salazar v. Astrue*, No. EDCV 07-00565-MAN, 2008 WL 4370056, at *7 (C.D. Cal. Sept. 23, 2008); *Xiong v. Commissioner of Social Sec.*, No. 1:09-cv-00398-SMS, 2010 WL 2902508 (E.D. Cal. July 22, 2010); *Isaac v. Astrue*, No. CIV S-07-0442 GGH, 2008 WL 2875879, *3-*4 (E.D. Cal. July 24, 2008); *Gilbert v. Colvin*, 6:14-cv-00394-AA, 2015 WL 1478441, at *7 (D. Or. Mar. 31, 2015). The Court finds the reasoning of these cases persuasive.

Accordingly, this Court concludes the ALJ's assessment of Plaintiff's RFC is consistent with the jobs identified by the VE requiring Level 2 reasoning. Plaintiff is not entitled to reversal or remand on this issue.

### C. Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to state sufficient reasons for discounting her credibility. (Joint Stip. at 17-20, 23).

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged

10

and there is no affirmative evidence of malingering, the ALJ must offer "clear and convincing" reasons to reject the claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *see also Reddick*, 157 F.3d at 722 ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" (quoting *Lester*, 81 F.3d at 834)). Moreover, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991). In addition to the "ordinary techniques of credibility evaluation," *Bunnell*, 947 F.2d at 346, the following factors may be considered in assessing credibility: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff testified that she was involved in a motor vehicle accident in 2007, which resulted in changes in her personality and a number of other symptoms, including migraines, light sensitivity, nausea, dizziness, vertigo, sweating, and loss of balance. Plaintiff also claimed she had difficulties with her relationships, had experienced episodes of rage, and was unable to prepare meals, perform household chores, or maintain a checking account. (AR 22-23, 39, 41-49, 53-54). Plaintiff reported that her family usually helps her care for her two young children, and she does not like to go out because she is afraid that someone might have a gun and start shooting. (AR 49-50, 53).

The ALJ found that although Plaintiff's medically determinable impairments

11

could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged.  (AR 24).  As discussed below, the ALJ offered legally sufficient reasons to support the adverse credibility determination.

Significantly, the ALJ found that medication helped to control Plaintiff's symptoms.  (AR 23-24, 52); *see* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for benefits); *Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1999) (in assessing claimant's credibility, ALJ did not err in considering that medication "aided" claimant's symptoms).  Plaintiff does not challenge this rationale, and the Court finds that Plaintiff's testimony and the medical record support the ALJ's conclusion.  At the hearing, Plaintiff testified that her current medication (Lamotrigine) was "probably the best" medication Dr. Paladugu had prescribed.  (AR 23, 52).  Plaintiff explained that the medication stopped the prolonged feeling of anger that she had been experiencing.  (AR 23, 52).  The medical record also shows that another medication (Effexor) helped with Plaintiff's moods, impulsivity, and migraine headaches.  (AR 24, 284, 297, 320).  Thus, the effectiveness of medications in controlling Plaintiff's mental symptoms was a valid reason for discrediting Plaintiff's testimony.  (AR 52, 54); *see Warre*, 439 F.3d at 1006.

The ALJ also properly observed that Plaintiff's subjective complaints and alleged limitations are inconsistent with her ability to engage in ordinary daily activities.  (AR 23-24); *Bunnell*, 947 F.2d at 346 (An ALJ may consider a claimant's daily activities when weighing credibility); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (upholding an ALJ's rejection of a claimant's credibility in partial reliance on the claimant's daily activities of cooking, cleaning, shopping,

interacting with others and managing her own finances and those of her nephew). Plaintiff reported that she interacted and cared for her two young children, changed diapers, drove her children to and from school, prepared simple meals, took her son to karate class two times a week, and occasionally shopped, drove to the bank, and performed some household chores.  (AR 23-24, 223-30).  Based on Plaintiff's admitted activities, the ALJ reasonably inferred that Plaintiff's testimony regarding her extreme limitations in functioning was not fully credible.  (AR 23-24, 43-49, 223-30).  *See*, *e.g.*, *Burch*, 400 F.3d at 680-81; *Thomas*, 278 F.3d at 958-59; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (claimant's testimony regarding daily domestic activities undermined the credibility of her pain-related testimony).  Although Plaintiff asserts that the evidence of her daily activities is susceptible to a different and more favorable interpretation, the ALJ's analysis was nonetheless reasonable, and should be upheld.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."); *Thomas*, 278 F.3d at 959 (Where "the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.").

Finally, the ALJ found that the objective medical evidence did not support greater limitations than assessed in the RFC.  (AR 24).  Plaintiff challenges this finding as error, noting there was significant evidence in the record to substantiate her impairments, including evidence of fluctuating mood, uncontrolled outbursts, and the need for assistance from family members.  (Joint Stip. at 19, 23).  Even if the ALJ erred in relying on the lack of objective evidence in support of the adverse credibility determination, such error did not affect the ALJ's decision because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record.  *See Carmickle*, 533 F.3d at 1162-63 (finding an error by the ALJ with respect to one or more factors in a credibility

13

1  determination may be harmless if the ALJ's "remaining reasoning and ultimate
2  credibility determination were adequately supported by substantial evidence in the
3  record" (citing *Batson,* 359 F.3d at 1197)).

4         Accordingly, reversal is not warranted based on the ALJ's adverse
5  credibility determination.

6                              **CONCLUSION AND ORDER**

7         Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be
8  entered affirming the decision of the Commissioner of Social Security and
9  dismissing this action with prejudice.  The Clerk of the Court shall serve this
10 Memorandum Opinion and Order and the Judgment herein on all parties or
11 counsel.

13    DATED: October 26, 2015        _____
14                                   GAIL J. STANDISH
15                                   UNITED STATES MAGISTRATE JUDGE